# Cases Argued and Determined

IN THE

# · SUPREME COURT

OF THE

# State of South Dakota. ·

WESTERN TOWN–LOT CO. v. LANE, County Treasurer (CITY OF HURON, Intervener).

Where a city is authorized to levy a tax, for general city purposes, of 10 mills on the dollar, the whole amount levied for general city purposes constitutes only one fund, and the common council is not authorized to divide it into separate funds, and appropriate it to the payment of warrants issued in any particular year, so as to deprive a holder of general fund city warrants issued in any prior year of the right of using his warrants in payment of municipal taxes in the manner prescribed by the statute.

(Syllabus by the Court. Opinion filed April 20, 1895.)

Appeal from circuit court, Beadle county. Hon. A. W. CAMPBELL, Judge.

Action by the Western Town-Lot Company for mandamus against George F. Lane, county treasurer, in which the city of Huron intervened. The writ was denied, and plaintiff appeals. Reversed.

The facts are stated in the opinion.

*John L. Pyle* and *Wm. B. Sterling,* for appellant.

*A. W. Wilmarth,* (*H. Ray Myers,* of counsel), for respondents.

A city warrant drawn for current expenses of one year is not payable out of the funds levied for a subsequent year. Shaw v. Slater, 74 Cal. 258; Fuller v. Heath, 89 Ill. 310; People v. May, 9 Cal. 404; Fuller v. Chicago, 89 Ill. 282; San Francisco v. Brickwebel, 62 Cal. 642. A city has the right to make a special levy for the current expenses for any fiscal year and to appropriate the money to be derived from said levy in advance. Springfield v. Edwards, 84 Ill. 626; Low v. People, 87 Ill. 385; Grant v. Davenport; 36 Ia. 396; People v. Pacheco, 27 Cal. 176; People v. Brooks, 10 Cal. 1; State v. McConley, 15 Cal. 430; State v. Patterson, 5 Nev. 17; Commissioners v. Newell, 80 Ill. 588; Brooms v. Town, 82 Ill. 11; People v. City, 50 Ill. 154; Hopkins v. State, 10 Cal. 249; Noughues v. Douglas, 7 Cal. 65; State v. Medberry, 7 Ohio 522; French v. Burlington, 42 Ia. 614. An indebtedness cannot be created in excess of constitutional inhibition for any purpose. Lake v. Rollins, 130 U. S. 662; Lake v. People, 87 Ill. 385; Sackett v. City, 88 Ind. 473; Soule v. City, 33 Pac. 386.

CORSON, P. J. In the year 1892 the property of the plaintiff, situated in the city of Huron, was assessed at $10,000, and city and school taxes levied thereon amounting to $345, $100 of which was for general city purposes, or "city general tax." In January, 1893, the plaintiff tendered to the county treasurer of Beadle county, who was by law authorized to collect the city taxes of the city of Huron, a city warrant drawn upon the general fund of said city for $100, bearing date July 25, 1892, and cash for $245, and demanded a tax receipt for the taxes due from the plaintiff to said city. The county treasurer refused to receive said warrant, and thereupon the plaintiff applied to the circuit court for a writ of mandamus, requiring him to receive the same. A hearing was had, and the court denied the writ, and its conclusions of law recite that it based its decision

upon the ground that the city warrant tendered was not payable out of the funds levied for the fiscal year 1892-93, but out of the funds levied for the fiscal year 1891-92.    The correctness or incorrectness of the court's conclusion of law is the only question to be determined.

The question presented is an important one, as the court held, in effect, that it is competent for a municipal government of a city to so levy its taxes, and appropriate the same to different funds and for specific purposes, as to virtually deprive holders of warrants issued in prior fiscal years of the right to collect the same until the expenses of the current year were paid.    The city of Huron, in making the city tax levy in September, 1892, seems to have proceeded upon the theory that it was competent for the city to make what the city designates a special levy for the current expenses of that fiscal year; and it therefore divided the anticipated city expenses into five funds, which it denominated "salary," "street department," "law department," "general," and "sinking" funds; and it apportioned the 10 mills on the dollar allowed to be levied for city purposes among the first four of these funds, apportioning to the general fund 1½ mills.    It is now contended by the learned counsel for the respondent that by reason of thus designating the particular purposes to which the taxes collected should be applied they are set apart to be used only for the purposes designated for that particular year, and, until the expenses of that year have been paid, no warrants drawn in former years can be paid or received for the taxes of that year.    The appellant, however, contends that the action of the city council, so far as it attempted to appropriate the revenues of 1892-93 exclusively to the expenses of that year, is unauthorized and void.    There seems to be a fatal objection to the position taken by the counsel for the city, and that is that there is neither in the city charter, General Statutes, nor constitution any provision that sustains the contention of the counsel.    The charter of the city provides (section 7 of subdivision 29): "The city council shall

have power * * * to appropriate money and provide for
the payment of the expenses and indebtedness of the corpora-
tion." Sec. 31: "To levy and collect taxes, not exceeding five
mills on the dollar for the purpose of providing a sinking fund
with which to pay any future bonded indebtedness of the cor-
poration, and not exceeding ten mills on the dollar for all other
municipal purposes in any one year, * * * and to levy and
collect special assessments for sidewalks and street improve-
ments as hereinafter provided." Section 20 provides: "He
[the treasurer] shall pay no money out of the treasury other-
wise than upon warrants drawn upon him signed by the mayor
and countersigned by the clerk, with the corporate seal at-
tached. All warrants shall be paid in the order in which they
are presented, and the treasurer shall note upon the back of
each warrant presented to him the date of such presentation
and when payment is made and the date of such payment."
Section 35 provides: "The city council shall, on the first Mon-
day in September or at their next meeting, by resolution, levy
such sum or sums of money as may be sufficient for the current
expenses and debts of the corporation, * * * which resolu-
tion shall specify the sums levied for the various purposes des-
ignated." The state statutes bearing on this subject reads as
follows (section 1598, Comp. Laws): "Territorial warrants are
receivable for the amounts payable in the territorial treas-
ury on account of the general territorial taxes; * * * and
city warrants shall be received for city taxes." Same pro-
vision in section 80, c. 14, Laws 1891. And by chapter 21, Laws
1891, provision is made for proceedings where a warrant is for
a larger amount than the tax to be paid. From these various
provisions of the charter and the statute it will be observed
that the city council of the city of Huron is authorized to levy
a ten mill tax for municipal purposes; and warrants issued by
the city are to be paid "in the order in which they are pre-
sented"; that the taxes may be paid in warrants, in the cases
provided for; and that there is no provision of the charter or

the statute which in terms supports the theory of the city or the decision of the learned circuit court.

The counsel for the city have called our attention to two provisions in the state constitution which they insist settle the question in their favor. These are section 8 of article 11, which provides: "No tax shall be levied, except in pursuance of a law which shall distinctly state the object of the same, of which the tax only shall be applied." and section 5, art. 10, which provides: "* * * Nor shall money raisea by taxation, loan or assessment for one purpose ever be diverted to any other." The error in the counsel's position is that the city is authorized to levy a 10-mill tax for city purposes, not a specfic tax for one designated municipal purpose, and a specfic tax for another, etc. Neither the constitution, laws of the state, nor the charter so provides. The charter declares the city may levy a tax, not exceeding 10 mills on the dollar, for municipal purposes. The constitution declares that "no tax shall be levied, except in pursuance of a law, which shall distinctly state the object," etc. When, therefore, the city levies a tax for municipal purposes, not exceeding 10 mills on the dollar, it does so by authority of law; and the object is distinctly stated, namely, municipal purposes; and the tax so levied cannot be used for other than municipal purposes. To give these constitutional provisions a more limited or restricted construction would clearly be against the evident intention of the framers of the constitution, and lead to embarrassing results. To illustrate: When the law anthorizes a tax for school purposes to be levied, a tax levied for school purposes would be sufficient, without specifying the precise purpose to which the money was to be applied,—whether in payment of teachers' wages or other necessary school expenses. And so in regard to road tax, bridge tax, general county fund tax, etc. If the money is appropriated to the general purpose, and used for that purpose, the constitutional provision is complied with. Suppose a board of county commissioners, authorized to levy six mills on the dollar for

general county purposes, in a county having a large floating debt, should conclude to subdivide the county general fund into an indefinite number of funds, limiting the general fund to one-tenth of a mill on a dollar, and insist that the funds of the county were so appropriated that general fund warrant holders could neither collect their warrants nor use them in payment of their taxes. Could such a proceeding be sustained? We apprehend not. Yet, if the system adopted by the city council of the city of Huron could be sustained, we can discover no principal that would prevent the same rule being applied to counties or to school districts. A city undoubtedly may, for its own convience, make an estimate of the money it may require for each particular city purpose; but when it makes its levy, all those various sums must be aggregated, and the levy made for the total amount required for general municipal purposes. Of course, if the city makes any levy for bonded indebtedness, for interest, for the payment of any judgments, or for any special purpose authorized by law, the levy may be special as to those purposes. Its general municipal expenses cannot, however, be divided and subdivided, and appropriations made for specific purposes in advance, so as to cut off the rights of holders of warrants on its general fund, as was attempted to be done in the case at bar. Such a system, if permitted, would in a great measure repeal the laws of the state, and in fact one of the material provisions of the city charter, which provides that "all warrants shall be paid in the order in which they are presented." Holders of valid city warrants have vested rights that cannot be ignored. Payment of such warrants in the manner provided by law cannot be suspended at the mere will and pleasure of the city council. The doctrine contended for would lead to the most astonishing results. If the contention of the counsel for the respondent could be sustained, why may not the city council make a special levy for each officer of the city, and for each item of the city's expenditure, including each separate teacher in the public schools, and thus, withdraw and appropriate the entire

municipal revenue from its creditors? And why may not counties and school districts adopt precisely the same system, and thereby virtually cut off the holder of the county or school district warrants?

We have examined the cases cited by counsel for respondents with much care, but we do not regard them as controlling this case. The cases of Shaw v. Statler, 74 Cal. 258, 15 Pac. 833, and Gas Co. v. Brickwedel, 62 Cal. 642, were decided under the provisions in the constitution of that state, and in construing the same. As we have no such constitutional provision or law in this state, they do not afford us much aid in determining the question presented. The decisions cited from Illinois were made in cases not analogous to the one at bar, and do not seem to throw much light upon the particular questions discussed in this opinion. The system adopted in this state, alike applicable to state, county, city, and school-district warrants, seems to be that warrants issued shall be paid in the order of presentation, or received in payment of taxes; and hence it is not competent for the bodies levying taxes to so appropriate them as to cut off or abridge the rights of the holders of warrants to enforce their payment in the order they are presented, or to use them in the payment of taxes in the manner pointed out by law. This system, whether wise or unwise, is now too firmly established to be disturbed by judicial decisions. Our conclusions are, therefore, that the ordinance of the city of Huron, in so far as it attempts to appropriate the 10-mill tax levied for general municipal purposes to the specific municipal funds and purposes designated in the ordinance, is ineffectual as against the holders of general fund warrants, and that such general fund warrants are payable in the order of their presentation, or available in the payment of taxes to the extent of the 10 mill levy for general municipal purposes, without regard to the manner in which the same has been attempted to be subdivided into distinct funds for specific purposes by said ordinance. In other words, the rights of holders of general fund

warrants are unaffected by the attempted appropriation of the general municipal tax of 10 mills on the dollar to specific funds designated in the ordinance. Counsel for appellant do not question the validity of the levy of the 10-mill tax for munici pal purposes, and the 2½-mill tax for the interest and payment of the city indebtedness, and the levy seems to have been legally and properly made. But its appropriation in advance to certain specific funds, and to be paid out only for certain specified purposes, cannot be sustained, to the detriment of those holding warrants upon the general fund so subdivided. It follows from the views expressed that the treasurer should have received the $100 general fund warrant in part payment of the taxes due from the appellant to the city, and that, upon the treasurer's refusal to so receive it, the circuit court should have granted the mandamus.

The point is made for the first time in this court that the treasurer was justified in refusing to receive the warrant in controversy for the reason that the same was made payable to the order of a person named, but was not indorsed or assigned by him. There would have been much force in this objection had the treasurer refused to receive it on that ground, and stated that as a ground for his refusal in his answer or return. But no such position was taken by the treasurer when the warrant was presented, or in the court below, and hence that objection comes too late in this court. It is probable that, had that objection been made to the warrant when presented, its proper indorsment or assignment could have then been obtained. It would be manifestly unfair, therefore, to permit the respondent to raise that question for the first time in the circuit or in this court. The treasurer having placed his refusal to receive the warrant upon other and specific grounds, he cannot now be permitted to change his position.

It is further contended by counsel for respondent that the treasurer was justified in refusing to receive the warrant in controversy on the ground that the indebtedness of the city of

Huron exceeded the constitutional limit when the warrant in question was issued, and that fact is fully set out in the answer of the city as intervener.  But it may be sufficient to say that it does not appear that when the warrant in controversy was issued there had been no tax sufficient to pay the same duly levied. Warrants issued upon a fund to create which a tax has been duly levied do not constitute a debt within the meaning of the constitution.  The warrant merely represents the tax levied but not then collected.  The fact that a municipality is indebted to the full constitutional limit does not prevent the same from levying such taxes as it is authorized to levy by law, and issuing its warrants within the limits of such levy in anticipation of their collection; and, so long as the warrants issued are within the amounts lawfully levied, they do not create an additional debt.  To render such warrants invalid, it must affirmatively appear, therefore, that no tax had been provided for their payment when the warrants were issued.  As before stated, this is not alleged in the answer in this case, and hence the answer does not state facts sufficient to constitute a defense, and must be disregarded.  State v. McCauley, 15 Cal. 455; People v. Brooks, 16 Cal. 28; Koppikus v. Commissioners, Id. 253; People v. Pacheco, 27 Cal. 175; State v. Medberry, 7 Ohio St. 529; State v. Parkinson, 5 Nev. 13; In re State Warrants (S. D.) 62 N. W. 101.  The judgment of the circuit court is reversed.  All the judges concur.